575 S.W.2d 113 (1978)
In re R. G. S.
No. 5229.
Court of Civil Appeals of Texas, Eastland.
December 14, 1978.
Rehearing Denied January 4, 1979.
*114 Robert Michael Brown, Brown & Harding, Lubbock, for appellant.
Joseph Thigpen, Dist. Atty., Haskell, Travis Hartgraves, County Atty., Aspermont, for appellee.
McCLOUD, Chief Justice.
On January 24, 1978, the father, stepmother and younger brother of appellant, R.G.S., were shot and killed. Three days later, appellant was taken into custody and detained. The State of Texas filed a petition on January 30, 1978, in the 39th District Court of Stonewall County, sitting as a juvenile court, seeking an adjudication, pursuant to Section 54.03 of the Texas Family Code,[1] that appellant engaged in delinquent conduct or conduct indicating a need for supervision. The "adjudication" petition alleged that appellant unlawfully, intentionally, and knowingly shot and killed his father, *115 stepmother, and brother. Appellant was summoned to appear at 2:30 p. m. on January 30, 1978, the date the petition was filed, to answer the allegations. On January 30, 1978, the court, following a hearing attended by appellant and his attorney, entered a detention order pursuant to Section 54.01. Appellant and his attorney filed written waivers of subsequent detention hearings. On February 22, 1978, the court ordered the Juvenile Office of Taylor County to make a complete diagnostic study, social evaluation, and full investigation of the appellant, his circumstances, and the circumstances of the alleged offense. On March 10, 1978, the court, pursuant to appellant's motion for an adjudication hearing, entered an order setting the "adjudication hearing" for March 20, 1978. On March 13, 1978, the State filed its petition requesting the juvenile court to waive its jurisdiction and transfer the cause to the appropriate criminal court in Stonewall County in accordance with Section 54.02, which provides in part:
(a) The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:
(1) the child is alleged to have violated a penal law of the grade of felony;
(2) the child was 15 years of age or older at the time he is alleged to have committed the offense and no adjudication hearing has been conducted concerning that offense; and
(3) after full investigation and hearing the juvenile court determines that because of the seriousness of the offense or the background of the child the welfare of the community requires criminal proceedings.
On March 13, 1978, the court set the "waiver hearing" for March 17, 1978. On March 15, 1978, the court entered an order stating that on March 14, 1978, it learned that the State had filed its waiver of jurisdiction and transfer petition, and the court on such date, on its own motion, vacated the March 20, 1978, adjudication hearing setting. The court also denied appellant's request for a new "adjudication hearing" setting. Appellant sought, and was granted, three continuances of the transfer hearing. On May 26, 1978, the transfer hearing was held and by order dated June 1, 1978, the juvenile court waived jurisdiction and ordered the cause transferred to the District Court of Stonewall County for criminal proceedings.
Appellant appeals from the order waiving jurisdiction and transferring the cause. We affirm.
In his first point of error, appellant contends the court erred in denying him a speedy "adjudication hearing" in violation of the mandatory provisions of Section 53.05. We disagree. Section 53.05 provides that the court shall set the hearing, if the juvenile is in detention, not later than ten days after the petition is filed. The initial hearing was set within the statutory period.
Appellant's main complaint is that the court, on its own motion, had no authority to vacate the March 20, 1978, trial setting for the "adjudication hearing."
The rule that a hearing must be set, but not heard, within the ten-day provision, was discussed in Matter of J. R. C., 551 S.W.2d 748 (Tex.Civ.App.Texarkana 1977, writ ref'd n. r. e.), as follows:
Section 53.05 merely requires that the time initially set for the hearing be not later than 10 days after the filing of the petition. It does not preclude continuing the hearing by agreement or for good cause. Smith, Parent and Child, Tex. Family Code Symposium, 5 Tex.Tech.L. Rev. 551 (1974). As for the delays which occurred after the time initially set for the hearing, appellant participated in or was responsible for a considerable portion of those delays, and under the record presented here he is in no position to complain of them.
In the recent case of L. L. S. v. State, 565 S.W.2d 252 (Tex.Civ.App.Dallas), writ ref'd n. r. e. per curiam, 569 S.W.2d 495 (Tex.1978), the court properly held that a juvenile court, on its own motion, could continue a hearing. The court said:

*116 We do not interpret section 53.05 as imposing a jurisdictional limitation requiring dismissal of the proceeding unless a proper waiver or ground for postponement is shown by the record. The requirement that a hearing be set within ten days after the filing of the petition is mandatory, but there is no jurisdictional requirement that the hearing be completed at that time. The requirement for a setting within ten days provides a time for appearance for both parties. The judge can then determine whether the child is adequately represented and what the future schedule of the case should be. Whether the hearing on the state's petition or on its motion to transfer is completed on that date or postponed is a matter within the court's discretion, subject to the constitutional requirement of a speedy trial. Respondent does not contend that the period of the delay in the present case was so long as to constitute a constitutional denial of due process apart from the provision of section 53.05 that a hearing be set within ten days. We construe the statute as permitting a postponement in the court's discretion and on the court's own motion, so long as the postponement is not for such a long period as to be a denial of due process.
We hold that the trial court, upon learning that the State had filed a waiver and transfer petition, did not abuse its discretion when it vacated, on its own motion, the previous order setting the "adjudication hearing" for March 20, 1978. We think that neither Rule 247 nor Rule 251, T.R. C.P., should prohibit a juvenile court from vacating, on its own motion under proper circumstances, a previously set date for an adjudication hearing. Moreover, appellant's complaint that the court erred in continuing or postponing the adjudication hearing, would have to be raised in the appeal of the adjudication proceeding. There has been no "adjudication" trial or appeal. Appellant has failed to show the court abused its discretion.
Appellant next argues that the admission into evidence of hearsay portions of the diagnostic study denied him due process of law and the right to confront the absent witnesses, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States.
Appellant complains of certain information contained in the report prepared by Joyce Talbot, Assistant Juvenile Officer of Taylor County. The report, ordered by the court, shows that the hearsay information under attack was obtained by Talbot from reports compiled by the district attorney's office. Talbot's report expressly identifies by name the persons who gave the information, and to whom the information was given.
Section 54.02 expressly provides that the juvenile court, in a waiver hearing, may consider certain hearsay reports. The waiver statute provides in part:
(d) Prior to the hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense.
(e) At the transfer hearing the court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses. At least one day prior to the transfer hearing, the court shall provide the attorney for the child with access to all written matter to be considered by the court in making the transfer decision. The court may order counsel not to reveal items to the child or his parent, guardian, or guardian ad litem if such disclosure would materially harm the treatment and rehabilitation of the child or would substantially decrease the likelihood of receiving information from the same or similar sources in the future.
(f) In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:
(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

*117 (2) whether the alleged offense was committed in an aggressive and premeditated manner;
(3) whether there is evidence on which a grand jury may be expected to return an indictment;
(4) the sophistication and maturity of the child;
(5) the record and previous history of the child; and
(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.
In Matter of J. R. C., 551 S.W.2d 748 (Tex.Civ.App.Texarkana 1977, writ ref'd n. r. e.), the appellant contended that the psychological and social reports should not have been considered by the juvenile court because they constituted hearsay, were based upon further hearsay, and were not identified or authenticated by any witness. After observing that Section 54.02(d) requires the juvenile court to order such reports, and that Section 54.02(e) specifically states that the court may consider such reports, the court said:
Although the reports, being ex parte and made out of court, were hearsay, the legislature is free to provide for the reception of hearsay statements into evidence when it is deemed necessary, and it has frequently created exceptions to the hearsay rule for such purposes. Such an exception is particularly appropriate in a proceeding such as this, where the purpose is not to determine guilt but merely to evaluate the background and maturity of the child in order to determine if he may be rehabilitated or if he should be subject to criminal proceedings. The rules of evidence have traditionally been relaxed in proceedings concerning the welfare of children. Matter of Honsaker, 539 S.W.2d 198 (Tex.Civ.App. Dallas 1976, writ ref'd n. r. e.); Brown v. Brown, 500 S.W.2d 210 (Tex.Civ.App. Texarkana 1973, no writ); Cooksey v. Perkins, 263 S.W.2d 952 (Tex.Civ.App. Galveston 1954, writ ref'd n. r. e.); Williams v. Guynes, 97 S.W.2d 988 (Tex.Civ.App. El Paso 1936, no writ)....
After noting that the appellant had access to the reports, the court stated:
He had notice of their identity, and pursuant to the requirements of Section 54.02(e) of the Family Code he received copies of the reports prior to the hearing. If there was doubt as to the genuineness of the reports or a need to cross-examine the authors with reference thereto, he had ample opportunity to raise the issue and call the authors as witnesses or produce other evidence bearing upon the question.
See also R. M. v. State, 563 S.W.2d 853 (Tex.Civ.App.Austin 1978, no writ); Matter of Honsaker, 539 S.W.2d 198 (Tex.Civ. App.Dallas 1976, writ ref'd n. r. e.); R. E. M. v. State, 541 S.W.2d 841 (Tex.Civ.App. San Antonio 1976, writ ref'd n. r. e.); Matter of P. B. C., 538 S.W.2d 448 (Tex.Civ. App.El Paso 1976, no writ).
Appellant asserts that even though Section 54.02 permits hearsay reports, such reports violate his constitutional right of confrontation. We disagree.
The order appealed from was entered in a preliminary discretionary transfer hearing, not an adjudication hearing. Appellant's guilt or innocence was not determined. The issue for determination was whether the best interest of the juvenile and of society would be served by maintaining juvenile custody of appellant, or by transferring him to criminal district court for adult proceedings. Matter of Honsaker, 539 S.W.2d 198 (Tex.Civ.App.Dallas 1976, writ ref'd n. r. e.).
We have found no Texas case directly in point; however, appellant's contentions were, we think, properly answered in Clemons v. State, 162 Ind.App. 50, 317 N.E.2d 859 (1974) cert. denied, 423 U.S. 859, 96 S.Ct. 113, 46 L.Ed.2d 86 (1975). There the court, in a well reasoned opinion, held that in a "waiver hearing," as opposed to an "adjudication hearing," the juvenile court could consider hearsay reports without violating the juvenile's Sixth Amendment right to confrontation of witnesses. The court held that the Sixth Amendment right *118 applies specifically to criminal prosecutions and was not applicable to a waiver hearing. We adopt the rationale and will quote freely. The court stated:
The standard for determining what due process requires in a particular juvenile proceeding is "fundamental fairness." McKeiver v. Pennsylvania, supra, 403 U.S. [528] at 543, 91 S.Ct. 1976, 29 L.Ed.2d 647; Bible v. State, supra, 253 Ind. [373] at 385, 254 N.E.2d 319; Patterson v. Hopkins (N.D.Miss.1972), 350 F.Supp. 676.
In examining the question of whether "fundamental fairness" at a juvenile waiver hearing requires the exclusion of hearsay evidence, it is important to understand the nature of the waiver hearing. Unlike the delinquency hearing, a waiver hearing is dispositional in nature. As the Supreme Court of Washington stated in State v. Piche (1968), 74 Wash.2d 9, 442 P.2d 632, 635, cert. denied 393 U.S. 1041, 89 S.Ct. 666, 21 L.Ed.2d 588 (1969):
"In determining whether the essentials of due process and fair treatment were provided in the instant case, it is important to keep in mind the exact nature of a juvenile court transfer (waiver) hearing. Such a hearing does not result in a determination of delinquency...; does not result in the determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding. Rather, the sole purpose of the transfer hearing, as we have recently said, is to determine `whether best interests of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult.' ..."
See also State v. Carmichael (1973), 35 Ohio St.2d 1, 298 N.E.2d 568, cert. denied, 414 U.S. 1161, 94 S.Ct. 922, 39 L.Ed.2d 113 (1974) and State ex rel. Juvenile Dept. of Marion County v. Johnson (1972), 11 Or. App. 313, 501 P.2d 1011, rejecting the contention that a waiver hearing should be considered adjudicatory in nature....
The court continued:
We conclude that fundamental fairness does not require the exclusion of hearsay in the waiver hearing setting. Just as in the judicial function of sentencing, consideration must be given to such factors as the previous record, background, and possibility for rehabilitation of the particular individual before the Court. The decision-making performed by the trial judge in sentencing is analogous to the waiver determination by a juvenile court judge. As we stated in Hineman v. State (1973), 155 Ind.App. 293, 292 N.E.2d 618, 624:
"... The strict rules of evidence applicable during trial are no longer applicable at sentencing where the precommitment report may be a dominant influence. This basic difference was drawn by the Supreme Court of the United States in Williams v. New York (1949), 337 U.S. 241, 246-247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337:
`... Highly relevantif not essential to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.'"
Other jurisdictions have considered the applicability of the hearsay rules in juvenile waiver hearings. They have concluded that such hearings are dispositional and that the hearsay rules do not apply. See In re Murphy (1972), 15 M.D.App. 434, 291 A.2d 867; State v. Piche, supra; State v. Carmichael, supra.
*119 In Clemons, a report introduced in evidence, prepared by the Porter County Probation Department, contained information obtained from the LaPorte County Juvenile Office. The court, after noting that under the rule announced in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the juvenile was entitled to see the report, said:
The final hearsay objection involved a probation report prepared by the Porter County Probation Department. The report contained information from the LaPorte County Juvenile Office. Although the Porter County Probation Officer testified at the waiver hearing and was available for cross-examination, Clemons contends that he was denied his right to confront witnesses. As in the case of a sentencing hearing, to hold that the hearsay rules apply to exclude such evidence as psychological reports, probation reports and social reports would seriously impair the juvenile judge's ability to determine whether waiver was in "the child's welfare and the best interests of the state." Clemons is protected from consideration of erroneous reports by his right to access to such reports under Kent v. United States, supra, and by his right to present evidence of any circumstances that would entitle him to the benefits of the juvenile justice system under Summers v. State [248 Ind. 551, 230 N.E.2d 320], supra. As the United States Supreme Court stated in Kent v. United States, supra, 383 U.S. at 563, 86 S.Ct. at 1058:
"... (I)f the staff's submissions include materials which are susceptible to challenge or impeachment, it is precisely the role of counsel to `denigrate' such matter. There is no irrebuttable presumption of accuracy attached to staff reports. If a decision on waiver is `critically important' it is equally of `critical importance' that the material submitted to the judgewhich is protected by the statute only against `indiscriminate' inspection be subjected, within reasonable limits having regard to the theory of the Juvenile Court Act, to examination, criticism and refutation. While the Juvenile Court judge may, of course, receive ex parte analyses and recommendations from his staff, he may not, for purposes of a decision on waiver, receive and rely upon secret information, whether emanating from his staff or otherwise. The Juvenile Court is governed in this respect by the established principles which control courts and quasi-judicial agencies of the Government."
Most written reports contemplated by paragraph (d) of Section 54.02 will contain information that the reporter secures from other persons. The reporter, Talbot, in the instant case, expressly included the source where the information came from. Joyce Talbot testified at the hearing and was cross-examined. Appellant was furnished a copy of the controversial report approximately two months prior to the transfer hearing Appellant had ample opportunity to attack, if he chose, the uncomplimentary information contained in the report. A juvenile court may consider certain hearsay reports at a transfer or dispositional hearing that would not be admissible at an adjudication hearing. See Tyler v. State, 512 S.W.2d 46 (Tex.Civ.App.Beaumont 1974, no writ) and Matter of A. A. A., 528 S.W.2d 337 (Tex.Civ.App.Corpus Christi 1975, no writ) regarding dispositional hearings. Appellant's constitutional right of confrontation has not been violated.
In his last point of error, appellant asserts that subparagraphs (2) and (6) of subsection 54.02(f), by their own terms, and by the court's application thereof, presumed the guilt of appellant, contrary to his constitutionally protected right to a presumption of innocence, and due process right to be presumed innocent of the charge against him. Appellant argues that subparagraph (2) assumes that the juvenile committed the offense, and only permits the court to question whether he committed it "in an aggressive and premeditated manner." He further points out that if the statute recognized the "presumption of innocence" it would not be necessary to consider "the *120 prospects of adequate protection of the public" and "the likelihood of the rehabilitation of the child" required in subparagraph (6) of subsection 54.02(f).
The presumption of innocence, although not articulated in the United States Constitution, is a basic component of a fair trial under our system of criminal justice. Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). We think that the "presumption of innocence" principle urged by appellant applies to "adjudication" proceedings, but not to "transfer" proceedings. We find the case of In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 1074, 25 L.Ed.2d 368 (1970), to be persuasive. In that case, the court held that the proof in an adjudication hearing must be "beyond a reasonable doubt." The court narrowed its opinion to adjudication proceedings where the accused has at stake loss of liberty and stigmatization upon conviction. The court carefully pointed out that the reasonable doubt principle would not apply to hearings prior to an adjudication hearing:
Nor will there be any effect on the informality, flexibility, or speed of the hearing at which the factfinding takes place. And the opportunity during the post-adjudicatory or dispositional hearing for a wide-ranging review of the child's social history and for his individualized treatment will remain unimpaired. Similarly, there will be no effect on the procedures distinctive to juvenile proceedings that are employed prior to the adjudicatory hearing.
We point out that Section 54.03, the "Adjudication Hearing" section, expressly provides in subsection (f):
The child shall be presumed to be innocent of the charges against him and no finding that a child has engaged in delinquent conduct or conduct indicating a need for supervision may be returned unless the state has proved such beyond a reasonable doubt. In all jury cases the jury will be instructed that the burden is on the state to prove that a child has engaged in delinquent conduct or is in need of supervision beyond a reasonable doubt.
When a court, under Section 54.02, waives its jurisdiction and transfers the juvenile to the appropriate district court for criminal proceedings, it does not determine the guilt or innocence of the juvenile. On transfer of the juvenile, an examining trial shall be conducted by the court to which the case is transferred, and such court may remand the juvenile to the jurisdiction of the juvenile court. If the case is brought before the grand jury, the grand jury may or may not indict the juvenile.
We overrule appellant's point. The presumption he urges is not applicable to the transfer hearing. See Matter of P. A. C., 562 S.W.2d 913 (Tex.Civ.App.Amarillo 1978, no writ).
We have considered all points of error and all are overruled. The judgment of the trial court is affirmed.
NOTES
[1] All statutory references, unless otherwise noted, are to sections in the Texas Family Code.