**In the Matter of J.S.C.**

**No. 13–93–305–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 18, 1994.

Rehearing Overruled April 21, 1994.

Ronald Piperi, E. Kent Ellis, Houston, for appellant.

John C. Dickerson, III, Melissa Abshire, Matagorda County Attorney's Office, Bay City, Jim Vollers, Austin, for appellee.

Before KENNEDY, GILBERTO HINOJOSA and YAÑEZ, JJ.

## OPINION

KENNEDY, Justice.

J.S.C. is charged with capital murder of two juveniles, committed when J.S.C. was sixteen years old. He appeals from an order by which a juvenile court waived its exclusive, original jurisdiction and transferred his case to criminal district court. Appellant seeks a reversal and remand of the matter to juvenile court and to have further proceedings against him addressed in juvenile court. By four points of error, appellant complains that the juvenile court improperly transferred its jurisdiction because it reached its decision without first obtaining and considering a diagnostic study of appellant as required by Texas Family Code section 54.-02(d). We affirm the trial court's order.

The State alleged in its petition for waiver of jurisdiction that J.S.C., during the same criminal transaction, intentionally and knowingly caused the death of one woman by stabbing her with a knife, and intentionally and knowingly caused the death of a second woman by stabbing her with a knife while in the course of committing and attempting to commit aggravated sexual assault.

Texas Family Code section 54.02(a) provides that the juvenile court may waive its exclusive, original jurisdiction and transfer a child to the appropriate district court for criminal proceedings if the child is alleged to have committed a felony and was aged fifteen or older at the time of the alleged offense. Tex.Fam.Code Ann. § 54.02(a) (Vernon Supp.1994). When considering whether to transfer its jurisdiction, the court must conduct a full investigation and hearing. *Id.* The juvenile court then determines whether there is probable cause to believe that the child committed the offense alleged, and, that because of the seriousness of the offense, *or,* the background of the child, the welfare of the community requires criminal proceedings. *Id.* (emphasis added). Texas Family Code section 54.02(d) provides that before the transfer hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense. Tex.Fam. Code Ann. § 54.02(d) (Vernon 1986). In making its decision, the juvenile court shall consider, among other matters:

1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person; 2) whether the alleged offense was committed in an aggressive and premeditated manner; 3) whether there is evidence on which a grand jury may be expected to return an indictment; 4) the sophistication and maturity of the child; 5) the record and previous history of the child; and 6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

Tex.Fam.Code Ann. § 54.02(f) (Vernon 1986).

Absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *In re D.W.L.,* 828 S.W.2d 520, 525 (Tex.App.—Houston [14th Dist.] 1992, no writ); *In re D.J.R.,* 565 S.W.2d 392, 395 (Tex.App.—Fort Worth 1978, no writ).

Pursuant to section 54.02, the court ordered, obtained and considered a certification investigation report. Typically, the certification report includes a psychiatric report, a psychological report, and a report by a pro-

bation department caseworker. *See In re W.R.M.*, 534 S.W.2d 178, 180 (Tex.Civ.App.—Eastland 1976, no writ). Included in the certification report were reports by a psychiatrist, a psychologist, and appellant's juvenile probation officer. The court obtained these studies and reports before the hearing.

In its order, the court stated that, among other things, it had considered the factors set forth in Family Code section 54.02(f). After conducting a full investigation and hearing arguments of counsel, the court determined that there was probable cause to believe that appellant committed the offenses of capital murder as alleged. The court waived its exclusive, original jurisdiction for the following reasons: 1) the alleged offenses were against persons; 2) the alleged offenses were committed in an aggressive and premeditated manner; 3) there appears to be evidence upon which a grand jury may be expected to return an indictment; 4) the sophistication and maturity of the juvenile are such that he understands the allegations against him, and he is able to assist his attorney in his defense; 5) the child will not likely be rehabilitated through the juvenile system; 6) without effective rehabilitation through the juvenile system, the public will not be adequately protected; and 7) without adequate protection of the public, the welfare of the community requires criminal proceedings against the juvenile. The court's waiver order then states, "After conducting such full investigation, including evidence and argument of counsel, this Court finds that the welfare of the community requires criminal proceedings that there is probable cause to believe that the child committed the offenses of capital murder."

By point one, appellant asserts that the court did not obtain and consider a complete diagnostic study of appellant as required by the Family Code. By point four, appellant contends that the trial court abused its discretion when transferring its jurisdiction. Appellant asserts that the diagnostic study was incomplete because it did not include an interview with appellant. Appellant specifically asserts that the court should have determined that the psychological evaluation received was unsatisfactory. Appellant sug-

gests that the proper action was for the court to order a new psychological evaluation, and reset the hearing to be conducted only when a satisfactory evaluation had been made, obtained, and considered by the court.

The testimony at the hearing reflects that Dr. Williams, a psychiatrist, attempted to interview appellant on three occasions. Dr. Williams explained that upon each attempt, appellant politely declined to answer his questions. Dr. Williams recalled that appellant told him that his attorney advised him not to answer any of the doctor's questions. Dr. Williams reviewed medical and school records that were sent to him regarding appellant. Dr. Williams also spoke with people at the Brazoria County Juvenile Detention Center. Dr. Williams also observed appellant for between an hour and ninety minutes at the detention center. Based on the information collected, Dr. Williams opined that appellant was "quite sophisticated and mature for his age." Based upon the records received, the persons interviewed and what Dr. Williams observed, he testified that he had gathered all of the information necessary for his conclusions. He also stated that he spent much more time on this case because he was unable to interview appellant. Additionally, he determined that appellant knew the difference between right and wrong.

Appellant's attorney, during cross-examination, asked Dr. Williams about a telephone conversation the two had in which the attorney discussed the possibility of being present when the doctor interviewed appellant. Dr. Williams recalled the conversation and testified that he had told the attorney that he "had no objection to [him] being [at the interview] when [he] asked me." The doctor continued, "[t]o the best of my recollection, I said I did not object if you were there." Additionally, Dr. Williams said that he did not notify appellant's attorney when he attempted the interviews because the attorney never asked that he be informed when the interviews would take place and never stated that he wanted to be present. The attorney suggested to Dr. Williams that each time he attempted an interview perhaps appellant had answered that he did not want to speak with the doctor without his attorney present.

The doctor responded that appellant never told him that. The doctor also stated that appellant never told him that he would talk to the doctor if his attorney were present. Appellant did not testify at the hearing and there is no evidence that appellant ever stated that he wanted his attorney present at the interviews.

Dr. Joe, the psychologist, attempted to interview appellant on three occasions. Dr. Joe testified that on those occasions, upon introducing himself, appellant responded that "he had been advised by his attorney not to take any tests or answer any questions at that time." Dr. Joe also reviewed school and medical records which helped him to gain some sense of the overall perspective of the appellant's ability to function intellectually. Dr. Joe noted by reviewing appellant's achievement test summaries, he determined that appellant was functioning at the average range or above average range of intelligence. Dr. Joe stated that because of the limited perspective he had of appellant he was not comfortable making an overall recommendation. Upon further questioning, Dr. Joe stated that he did not see any reason that appellant should not be certified as an adult.

Both doctors testified that generally an attorney is not present when they conduct interviews with juveniles whom the State is requesting be tried as adults.

James Hicks, the juvenile probation officer for Matagorda County, testified at the hearing that he was ordered by the court to make a social evaluation, and full investigation of the child and his circumstances, and the circumstances of the alleged offense. He filed his report before the hearing.

At the hearing, Hicks testified about the information he reviewed regarding the investigation of the offenses. He reviewed the sheriff's offense reports; viewed a video; heard a 911 tape; and interviewed sheriff's officers, and several school officials who were acquainted with appellant.

In this case, the evidence shows that appellant made a 911 call to the police identifying himself and stating that he had killed two people and was still at the scene. Officers arriving at the scene found a thirteen-year-old female lying on a bed with a gown or shirt pulled above her breasts with the lower part of her body exposed. There was a large wound opened in her chest, there appeared to be knife wounds in her hand, and her vagina appeared to have been lacerated. Blood covered most of her body. Officers also found the body of a seventeen-year-old female who was dressed in a T-shirt, with the lower part of her body exposed. Her throat had been cut. Blood covered most of her body. Officers discovered a large butcher knife, believed to be the murder weapon, and a window opened onto the rear stairway which was believed to be the point of entry and exit. The officers also found a pair of shoes at the foot of the rear stairway which were believed to belong to J.S.C. The court heard evidence at the hearing that three days before these murders, appellant had attacked the seventeen-year-old's car breaking out the rear and side windows. Later that same day, appellant assaulted the seventeen-year-old by striking her in the mouth, splitting her lip, and breaking her eyeglasses. Appellant also had previous offenses of criminal mischief and assault, unauthorized use of a motor vehicle and assault, and telephone harassment. Hicks opined that there was sufficient evidence to find probable cause and that a grand jury would probably indict appellant for both offenses.

Hicks testified that appellant was enrolled in the eleventh grade at Tidehaven High School. He made average grades and his school records indicated that he has average or above average intelligence. He has maintained a romantic relationship for two years and drives an automobile. Hicks testified that appellant had spent several nights away from home. All of these factors led Hicks to believe that appellant was sophisticated and mature. Hicks noted that appellant had several friends of whom he was the leader.

Hicks also testified that the facilities, services, and procedures available to the juvenile court would not likely help in rehabilitating appellant. Hicks stated that he talked with several professional people who said, generally speaking, a five-year rehabilitation of intense psychotherapy and psychological therapy would be necessary to rehabilitate a

person charged with this type of offense. He explained that the juvenile system would not be adequate to deal with appellant because he has already turned seventeen and the juvenile system would be required to release him at age twenty-one, only four years. Hicks recommended that it would be in the best interest of the child and the community for the court to transfer the proceedings against appellant to criminal district court.

■ Section 54.02(d) requires the juvenile court to order and obtain a complete diagnostic study, a social evaluation, full investigation of the child and his circumstances, and the circumstances of the alleged offense. The juvenile court is not required to find each factor is established by the evidence. *In re C.C.G.*, 805 S.W.2d 10, 15 (Tex.App.— Tyler 1991, writ denied). The statute does not apportion the weight that the trial court shall give to any of these areas of investigation. *Id.* Additionally, appellant concedes that the statute does not give a list of everything to be included in a diagnostic study.

■ If the child refuses to cooperate with the authorities compiling the diagnostic study, a report is sufficient to satisfy the statutory requirements provided a bona fide effort is made to obtain the full study. *In re R.E.M.*, 541 S.W.2d 841, 844–45 (Tex.Civ. App.—San Antonio 1976, writ ref'd n.r.e.). An interview with appellant by the psychiatrist and the psychologist may have been helpful to the court in determining the sophistication and maturity factors of appellant. However, there was other evidence presented relating to appellant's sophistication and maturity. The record and previous history of the child, the prospects of adequate protection of the public, and likelihood of rehabilitation by use of the juvenile court procedures and services also were considered by the court.

■ The phrase "full investigation" is not defined in section 54.02. However, "[i]t is a matter of common knowledge that the course and scope of an investigation will vary according to the circumstances surrounding the events." *Turner v. State*, 796 S.W.2d 492, 497 (Tex.App.—Dallas 1990, no writ) (quoting *In re I.B.*, 619 S.W.2d 584, 586 (Tex.Civ.

App.—Amarillo 1981, no writ)). The determination of what constitutes a "full investigation" is for the trial court. *In re R.L.H.*, 646 S.W.2d 499, 502 (Tex.App.—Houston [1st Dist.] 1982, no writ).

■ The court determined, based upon the certification report, that because of the seriousness of the offense, the welfare of the community required criminal proceedings. The Family Code does not require that the court find both the seriousness of the offense and the background of the child demand criminal proceedings.

In reviewing the record from the hearing, we find no evidence that appellant would have answered the doctors' questions had his attorney been present. Nor is there any evidence in the record that appellant stated to the doctors that his attorney had instructed him not to answer any questions *unless* his attorney was present. We overrule point one.

■ In a lengthy, convoluted second point of error, appellant complains about Dr. Williams' use of appellant's Riceland Regional Mental Health Authority records in his psychiatric evaluation.

At trial the only objections appellant made to these records were as follows:

Appellant's attorney: Your Honor, I object to being hearsay. In order not to interrupt these proceedings anymore than I have to, Judge, can I have—well, I would like to object to the blanket hearsay situation that we have. Dr. Williams is making his report based on other information. The other information is available. If he's going to testify to it, I think we ought to have the opportunity to see it and I object on those grounds, Your Honor.

The Court: Overrule the objection.

\*    \*    \*    \*    \*    \*

Appellant's attorney: Your Honor, therefore, I object to anything [Dr. Williams] may give as far as Mr. Soliz (the doctor reporting in the medical records) is concerned.

\*    \*    \*    \*    \*    \*

The Court: I will overrule the objection. I would like to ask the doctor if you were denied this psychosocial history, this particular report, would it change your testimony?

Dr. Williams: No, it would not.

\* \* \* \* \* \*

By appellant's second point, he asserts that the medical records were privileged and that appellant had not waived his privilege. This complaint is not the same asserted by appellant's objections at the hearing. Appellant has failed to preserve this point for our review. Tex.R.App.P. 52(a). We overrule point two.

By point three, appellant urges that the court erred

in admitting and allowing witnesses to testify from the Riceland records over the objection of defense counsel that they were hearsay, after the court had told appellant: "additionally, let the court inform you that you have the right to call witnesses, to cross-examine and confront the state's witnesses and the right to subpoena witnesses in your own behalf.

In appellant's argument there is no specific reference to what "witnesses" nor to any specific portion of the record where this occurred. In appellant's argument the only reference was the assertion that Dr. Williams' report contained information from the Riceland records and the conclusory statement that the doctor's report and testimony from the Riceland records should not have been admitted as evidence.

■ No consistent rules regarding the admissibility of evidence have been developed for a transfer hearing, and courts often consider evidence that would be inadmissible at an adjudication hearing. *See In re R.G.S.,* 575 S.W.2d 113, 117 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.) (hearsay); *Kirkwood v. State,* 647 S.W.2d 49, 51 (Tex.App.—Dallas 1983, no writ). Strict rules of evidence are not applied in transfer proceedings because the weight of the evidence is judged by whether it would support an indictment for the offense, and a grand jury considering an indictment is permitted to receive evidence that would be inadmissible at an adjudication

hearing or trial. *In re M.E.C.,* 620 S.W.2d 684, 687 (Tex.Civ.App.—Dallas 1981, no writ).

■ Dr. Williams testified as an expert in psychiatry. The Riceland records were the records of a previously conducted psychiatric evaluation of appellant and were the type of records or information reasonably relied upon by experts in the field of psychiatry in forming opinions or inferences in the diagnostic study conducted by Dr. Williams. We find no error in his testifying and explaining the basis for his conclusions and the use of the records even though the Riceland records may not be admissible evidence at an adjudication hearing. We overrule point three.

We find no abuse of discretion in the juvenile court's transfer of its jurisdiction over these proceedings to criminal district court. We overrule point four. We affirm the juvenile court's transfer order.

Concurring opinion by YAÑEZ, J.

YANEZ, Justice, concurring.

I concur in the disposition of this case but write to address an issue of concern. The majority disposes of appellant's first point of error by which he complains of the lack of a personal interview with any of the evaluating specialists. Indeed, the question of whether the investigation and diagnostic study were sufficiently complete absent a personal interview between the accused and the reporting specialist has been resolved adversely to appellant in *In re R.E.M.,* 541 S.W.2d 841, 844–45 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). The Sixth Amendment does not require that the accused have counsel present during a psychiatric interview. *Estelle v. Smith,* 451 U.S. 454, 472 n. 15, 101 S.Ct. 1866, 1877 n. 15, 68 L.Ed.2d 359 (1981); *see also Cook v. State,* 741 S.W.2d 928, 944 (Tex. Crim.App.1987), *vacated on other grounds,* 488 U.S. 807, 109 S.Ct. 39, 102 L.Ed.2d 19 (1988), *cert. denied* —— U.S. ——, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1992); *Powell v. State,* 742 S.W.2d 353, 364 (Tex.Crim.App. 1987) (Onion, J. dissenting), *vacated on other grounds,* 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 926 (1988), *modified,* 767 S.W.2d 759, 762 (Tex.Crim.App.1989); *Bennett v.*

*State,* 766 S.W.2d 227, 231 (Tex.Crim.App. 1989), *vacated on other grounds,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), *cert. denied,* 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989), *citing Stultz v. State,* 500 S.W.2d 853 (Tex.Crim.App.1973). Nor does the Texas Family Code expressly extend any such right to a child under the juvenile court's jurisdiction. The reports required under § 54.02 are considered investigatory in nature rather than adversarial. *See In re R.G.S.,* 575 S.W.2d 113, 117 (Tex.Civ.App.— Eastland 1978, writ ref'd n.r.e.), *dismissed,* 445 U.S. 956, 100 S.Ct. 1639, 64 L.Ed.2d 231 (1980). Still, that the present complaint continues to visit the courts, as it did in *R.E.M.,* illustrates the need for guidance from the legislature.

Dr. Williams admitted that he remembered discussing the possibility of counsel's attending the interview. He also testified that appellant would not answer his questions because his attorney advised him not to. Appellant's refusal and counsel's discussion with Dr. Williams were sufficient to put the doctor on notice that appellant was represented by counsel and that counsel desired to be present at the interview. Thus, the choice facing Dr. Williams was either to notify appellant's attorney and attempt a personal interview with the attorney present or to do such an evaluation as he did—one based upon distant observation of the child and indirect, attenuated information from third parties.

Dr. W.K. Joe, a psychologist, also attempted to interview appellant and also received appellant's polite refusal to answer questions unless the attorney were present. Unlike Dr. Williams, Dr. Joe made no recommendation on certification because of his inability to interview appellant personally. Dr. Joe stated that, while not common, it would be possible to conduct an evaluation of the child with a confederate (such as an attorney) in the room. A third party's presence would affect his evaluation, but he could not speculate on whether the effect would be detrimental or beneficial. Dr. Joe opined that with the attorney present, he probably would have gained a more sufficient basis for his evaluation.

The two experts' testimony clearly demonstrates the conflict and its need for resolution. As discussed in *R.E.M.,* a doctor may evaluate the child as best he can when the child declines to participate in a personal interview. The lack of a personal interview will not automatically render the evaluation inadequate. Indeed, the judicial process must advance and may not be effectively blocked by the child's own behavior. However, the child who obeys his attorney's instructions to remain silent does so at his peril. *See R.E.M.,* 541 S.W.2d at 845 (the child was found to be "capable of cooperating with his attorney since he was following his instructions to the letter").

Based upon past case law, I do not believe that the trial court abused its discretion in determining that Dr. Williams's diagnostic study was sufficient. *See Turner v. State,* 796 S.W.2d 492, 497 (Tex.App.—Dallas 1990, no writ); *In re R.L.H.,* 646 S.W.2d 499, 502 (Tex.App.—Houston [1st Dist.] 1982, no writ). The juvenile court's satisfaction with Dr. Williams's report is consistent with *R.E.M.,* and I would not disturb that determination on the record presented. Nor do I quarrel with the majority's decision that the juvenile court properly transferred appellant based upon the consideration factors under section 54.02(f).

The statute mandates that the juvenile court order a complete diagnostic study. TEX.FAM.CODE ANN. § 54.02(d). The juvenile will be represented by counsel at that time, and counsel will frequently direct the juvenile not to answer the doctor's questions. *See* TEX.FAM.CODE ANN. § 51.10 (Vernon 1986). Thus, the present impasse develops, and will continue to repeat itself, automatically. A doctor who will not coordinate with defense counsel is relegated to doing a third-hand evaluation. He or she will ultimately provide the court with a report which may be legally sufficient, but is certainly not very helpful. The goals and policies which our Family Code intended to effect are not furthered by such a practice. The Family Code requires the diagnostic study and full investigation in order to assist the trial judge in making the very significant determination of whether to transfer the child to the district

**332**

court for criminal proceedings. The judge will base the determination upon the child's background, among other things, as well as his sophistication and maturity. Information on these factors will frequently be supplied, at least in part, by the psychiatrist's personal interview. When the situation arises, as it frequently must, in which the juvenile will not answer without his attorney present, allowing counsel to attend the interview would ultimately lead to better results, and the juvenile courts would have the benefit of more substantial studies to guide them in their decisions.