

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00834-CV

**IN THE MATTER OF R.I.C.**

From the 436th District Court, Bexar County, Texas
Trial Court No. 2018JUV01596
Honorable Lisa Jarrett, Judge Presiding

Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: February 19, 2020

AFFIRMED

R.I.C. appeals the juvenile court's order waiving its jurisdiction and transferring him to criminal district court. In his first issue, R.I.C. asserts the juvenile court abused its discretion in admitting the testimony of a juvenile probation officer on R.I.C.'s susceptibility to rehabilitation. In his remaining issues, which R.I.C. combines for argument purposes, R.I.C. challenges the sufficiency of the evidence to support the juvenile court's findings under Section 54.02(f) of the Texas Juvenile Justice Code and contends the juvenile court abused its discretion in waiving its jurisdiction. We affirm the juvenile court's order.

## BACKGROUND

R.I.C. is alleged to have committed capital murder on or about November 12, 2018 by intentionally causing the death of Abram Garcia by shooting him with a deadly weapon, namely a

firearm, while in the course of committing and attempting to commit the offense of robbery. R.I.C. was born on February 4, 2003, and was fifteen on the date of the alleged offense. On December 28, 2018, the State filed a petition requesting the juvenile court to waive its jurisdiction and transfer R.I.C. to criminal district court.

The juvenile court held a hearing on the State's petition on April 16, 2019, and the juvenile court signed an order granting the petition the same day. R.I.C. appealed the order to this court, and we vacated the juvenile court's order, holding the order lacked "the case-specific findings of fact necessary to support the juvenile court's reasons for waiving jurisdiction." *In re R.C.*, No. 04-19-00262-CV, 2019 WL 4044029, at *4 (Tex. App.—San Antonio Aug. 28, 2019, no pet.) (mem. op.). We remanded the cause to the juvenile court for further proceedings. *Id*.

After our mandate issued, the juvenile court held another hearing on October 15, 2019. At the hearing, R.I.C.'s attorneys argued the juvenile court should not hear any additional evidence. The juvenile court agreed to this procedure.

On November 13, 2019, the juvenile court held another hearing at which it signed an order granting the State's petition and waiving its jurisdiction. The order states R.I.C. and his attorneys "stipulated and agreed that the court should proceed upon written reports from probation officers, professional court employees and/or professional consultants, as well as the transcript of a previous hearing on this matter held on April 16, 2019, and that they would not require any new live testimony at the hearing." In the order, the juvenile court noted: (1) a Discretionary Transfer Hearing Report prepared by Bexar County Juvenile Probation Officer Jeremy M. Torrez was filed with the court on January 30, 2019; (2) an amended Discretionary Transfer Hearing Report was filed on April 11, 2019; and (3) a Certification and Transfer Evaluation of R.I.C. prepared by Dr. Heather Holder was filed on February 4, 2019. Also in its order, the juvenile court made the required findings regarding the Section 54.02(f) factors which are detailed below.

## OFFICER TORREZ'S QUALIFICATION AS AN EXPERT

In his first issue, R.I.C. contends Officer Torrez was not qualified to testify regarding R.I.C.'s susceptibility to rehabilitation and amenability to treatment. R.I.C. first asserts Officer Torrez lacked the education or experience to testify as an expert because he had only been a juvenile probation officer for one and a half years and R.I.C. was "his first assigned juvenile charged with capital murder." R.I.C. further asserts Officer Torrez could not testify as a lay witness because his opinions were not rationally based on his perception because he only met with R.I.C. one time before the offense was committed and had "limited contact" with R.I.C.

At the April 16, 2019 hearing on the State's petition, Officer Torrez testified he had been employed with the juvenile probation department since December of 2015 and as a juvenile probation officer since October of 2017. He further testified he was assigned as R.I.C.'s juvenile probation officer on September 25, 2018, which was before the alleged offense. At that time, R.I.C. was on probation for possession of marijuana. On September 27, 2018, Officer Torrez received a phone call from R.I.C.'s school regarding R.I.C. being in an area of the school where he was not supposed to be. Officer Torrez went to the school to talk to R.I.C. When R.I.C. told Officer Torrez he was struggling to stay home while on the monitor, Officer Torrez told R.I.C. to contact him if he needed to be removed from his home. Officer Torrez also told R.I.C. that removing the monitor was the worst thing R.I.C. could do. The next day, R.I.C. removed the monitor and absconded from supervision. A warrant was issued for R.I.C.'s arrest; however, his whereabouts were unknown until he was arrested for the capital murder offense. Since R.I.C. was placed in detention on November 13, 2018, Officer Torrez had met with him on a weekly basis. Officer Torrez detailed all the resources he used in preparing his discretionary transfer hearing report and also detailed R.I.C.'s referral history. Officer Torrez further detailed R.I.C.'s behavior while in detention after the alleged offense, which included being placed in solitary based seclusion

four times and group restriction eighteen times. Officer Torrez testified solitary based seclusion is imposed for major rules violations, and R.I.C.'s violations ranged from being aggressive toward staff to assault on another juvenile. Officer Torres further testified R.I.C.'s detention record also shows other juveniles reported R.I.C. told them he was going to put them on "bow" which "essentially means that they pretty much have the kids under their rule." Juveniles who do not follow the rules imposed when placed on "bow" face consequences from the juvenile in charge which can include being assaulted.

When the State asked Officer Torrez if he had an opinion, based on his experience, "as to whether there would be a likelihood of rehabilitation of [R.I.C.] by use of procedures and facilities currently available to the juvenile court," R.I.C.'s attorney objected that Officer Torrez was not qualified to offer such an opinion. The State responded Officer Torrez was qualified based on his experience. After the juvenile court gave R.I.C.'s attorney permission to voir dire Officer Torrez regarding his qualifications, R.I.C.'s attorney asked only one question in response to which Officer Torrez acknowledged R.I.C. was Officer Torrez's first and only capital murder case. The juvenile court then overruled the objection.

"We review a trial court's rulings on the admissibility of evidence for an abuse of discretion." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). Rule 702 of the Texas Rules of Evidence permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. A party offering an expert witness "must demonstrate that the witness possess[es] special knowledge as to the very matter on which he proposes to give an opinion." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998) (internal quotation marks omitted). Rule 701 of the Texas Rules of Evidence permits

a witness who is not testifying as an expert to testify in the form of an opinion if the opinion is: (1) rationally based on the witness's perception; and (2) helpful to determining a fact in issue. TEX. R. EVID. 701.

Assuming for purposes of this opinion that Officer Torrez was required to be qualified as an expert to opine on R.I.C.'s susceptibility to rehabilitation, the evidence established Officer Torrez had been employed by the juvenile probation department for over three years and as a juvenile probation officer for one and a half years. Based on his experience, the juvenile court could infer Officer Torrez had observed the behaviors of juveniles in detention and their progression or lack thereof. Furthermore, the evidence established Officer Torrez met with R.I.C. weekly following his incarceration and, therefore, had experience with R.I.C.'s behavior and his reaction to the discipline imposed. Accordingly, we hold the juvenile court did not abuse its discretion in holding Officer Torrez was qualified to opine on R.I.C.'s susceptibility to rehabilitation.[1]

**DECISION TO WAIVE JURISDICTION AND TRANSFER R.I.C. TO CRIMINAL DISTRICT COURT**

In his remaining issues, which R.I.C. combines for argument purposes, R.I.C. challenges the sufficiency of the evidence to support the juvenile court's findings under Section 54.02(f) and contends the juvenile court abused its discretion in waiving its jurisdiction.

A.     Governing Statutory Provisions

To waive its jurisdiction and transfer R.I.C. to criminal district court for criminal proceedings, the juvenile court was required to find:

(1) R.I.C. was alleged to have committed a felony;

---

[1] The juvenile court also would not have abused its discretion in admitting Officer Torrez's opinion as a lay witness because his opinions were rationally based on his perception from his weekly meetings and interaction with R.I.C. *See* TEX. R. EVID. 701.

(2) R.I.C. was fourteen years old or older at the time he committed the alleged offense; and

(3) after a full investigation and a hearing, probable cause exists to believe R.I.C. committed the alleged offense and that because of the seriousness of the alleged offense or R.I.C.'s background the welfare of the community requires criminal proceedings.

*See* TEX. FAM. CODE ANN. § 54.02(a)(1)–(3). In making the determination required by Section 54.02(a)(3), the juvenile court was required to consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) R.I.C.'s sophistication and maturity;

(3) R.I.C.'s record and previous history; and

(4) the prospects of adequate protection of the public and the likelihood of R.I.C.'s rehabilitation by use of procedures, services, and facilities currently available to the juvenile court.

*See id.* § 54.02(f). If a juvenile court waives jurisdiction, "it shall state specifically in the order its reasons for waiver." *Id*. § 54.02(h).

B.      Standard of Review

In evaluating a juvenile court's decision to waive its jurisdiction under Section 54.02(a), we first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review."[2] *Moon v. State*, 451 S.W.3d 28, 47 (Tex. Crim. App. 2014). "When addressing a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard the contrary evidence unless a reasonable fact finder could not reject that evidence." *In re R.C.*, 2019 WL 4044029, at *2. "If more than a scintilla of evidence

---

[2] In his fourth issue, R.I.C. contends the juvenile court and this court are constitutionally required to take into consideration the three general differences between juveniles and adults identified in *Roper v. Simmons*, 543 U.S. 551 (2005), when viewing and weighing the factual findings required by Section 54.02(f). R.I.C. does not cite any authority in his brief to support this contention, and the Texas Court of Criminal Appeals did not adopt any such requirement in establishing the standard of review appellate courts are required to apply in *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014). Accordingly, we overrule this issue.

supports the challenged finding, a legal sufficiency challenge fails." *Id*. "When addressing a factual sufficiency challenge, we consider all of the presented evidence to determine whether the juvenile court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust." *Id*. "At a transfer hearing, the juvenile court is the sole judge of credibility and may choose to believe or disbelieve any or all of the witnesses' testimony." *In re S.T.*, No. 04-18-00133-CV, 2018 WL 5927983, at *3 (Tex. App.—San Antonio Nov. 14, 2018, pet. denied) (mem. op.). As the factfinder, the juvenile court is also the sole judge of the weight to be given the witnesses' testimony, and an appellate court cannot impose its own opinion to the contrary. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). In our sufficiency review, we must "limit [our] sufficiency review to the facts that the juvenile court expressly relied upon, as required to be explicitly set out in the juvenile transfer order." *Moon*, 451 S.W.3d at 50.

After reviewing the sufficiency of the evidence to support the juvenile court's findings, we then review the juvenile court's ultimate waiver decision for an abuse of discretion. *Id*. at 47. A juvenile court does not abuse its discretion if its decision is not arbitrary but reasonably applies the legislative factors to the evidence presented. *See id*. And, the Texas Court of Criminal Appeals has instructed reviewing courts that "not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction." *Id*. Instead, the juvenile court may waive its jurisdiction based "on the strength of any combination of the criteria" listed in Section 54.02(f). *Hidalgo v. State*, 983 S.W.2d 746, 754 n.16 (Tex. Crim. App. 1999). A "juvenile court that shows its work should rarely be reversed." *Moon*, 451 S.W.3d at 49.

C.      The Nature of the Alleged Offense

As previously noted, the first Section 54.02(f) factor a juvenile court is required to consider is "whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person." TEX. FAM. CODE ANN. § 54.02(f)(1). The juvenile court made the following findings regarding this factor:

> 10. The seriousness of the offense alleged requires criminal proceedings because according to the testimony of SAPD Detective Mark Duke: the offense alleged is a capital murder involving a firearm; the offense was against a person; the complainant was shot multiple times and the Medical Examiner's office found that gunshot wound was the cause of death.

The evidence at the hearing established R.I.C. was at a friend's apartment when Abram Garcia and his girlfriend arrived in a car outside the apartment intending to sell R.I.C. marijuana. R.I.C. approached the car, demanded that Garcia give him all of the marijuana in his possession, and then fired multiple shots. Garcia was shot two times and died as a result. Accordingly, the evidence supports the juvenile court's finding that the alleged offense was against a person, and this factor is given greater weight in favor of transfer.[3]

#### D. R.I.C.'s Sophistication and Maturity

The second Section 54.02 factor a juvenile court is required to consider is "the sophistication and maturity of the child." TEX. FAM. CODE ANN. § 54.02(f)(2). The juvenile court made the following findings regarding these factors:

---

[3] In his brief, R.I.C.'s argument regarding this factor focuses on the impact the admission of hearsay testimony has on the State's burden of proof and also alludes to R.I.C.'s right of confrontation. R.I.C. does not cite any authority holding hearsay testimony is not admissible at a juvenile transfer hearing or that he has a right to confrontation at such a hearing, and there is authority holding to the contrary. *See In re C.E.C.*, No. 2-06-065-CV, 2006 WL 3627134, at *2 (Tex. App.—Fort Worth Dec. 14, 2006, no pet.) (mem. op.); *In re C.D.T.*, 98 S.W.3d 280, 283 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *In re R. G. S.*, 575 S.W.2d 113, 117 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.); *see also L.M.C. v. State*, 861 S.W.2d 541, 542 (Tex. App.—Houston [14th Dist.] 1993, no writ) (rejecting argument regarding admissibility of hearsay at transfer hearing noting "appellant's rights will be fully protected when the case reaches trial, whether it ultimately takes place before the juvenile court or the criminal district court"). We further note the details of the alleged offense are contained in Officer Torrez's discretionary transfer hearing report. *See* TEX. FAM. CODE ANN. § 54.02(e) ("At the transfer hearing the court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses.").

11. The background of the child requires criminal proceedings because:

A. According to SAPD Detective Mark Duke, Respondent appeared mature and sophisticated enough to understand what he was doing and seemed like a normal 15-year-old.[4]

B. According to Bexar County Juvenile Probation Officer Jeremy Torrez, the respondent is sophisticated and mature enough to understand the proceedings against him; the Respondent was able to communicate with Officer Torrez; while in detention, Respondent was in Safety Based Seclusion four times due to aggressive and assaultive behavior, he was placed on group restriction approximately 18 times (mostly for challenging authority), and has placed other juveniles in detention "on bow" (Respondent has attempted to place other juveniles under his rule).

C. The testimony of Dr. Heather Holder showed Respondent is sophisticated and mature enough to survive away from his home for extended periods of time, as he stayed away from his home a great deal, especially in the 6 months prior to his detention; respondent has earned money doing painting and construction and set up a service cutting hair in his home for a brief period of time.

D. According to Dr. John Matthew Fabian, the Respondent is competent to stand trial. The Respondent was sophisticated and mature enough to be able to earn incoming [sic] by working construction and cutting hair at home.

Having reviewed the record, we hold the juvenile court's findings are supported by evidence presented at the hearing. Although R.I.C. points to Dr. Fabian's testimony that R.I.C. is emotionally immature and cognitively lacking in capacity and Dr. Holder's assessment that R.I.C. was low to moderate in sophistication and maturity, the juvenile court could have placed greater weight on the level of sophistication and maturity shown by R.I.C.'s behavior and actions, including leading a gang, caring for himself after removing his ankle monitor and running away while on probation, and admitting that he shot Garcia during the course of a drug transaction. *See Moon*, 451 S.W.3d at 50 n.87 (citing courts holding sophistication and maturity refers to the

---

[4] Although R.I.C. contends in his brief that the juvenile court sustained an objection to Detective Duke's testimony, the record reflects otherwise:

Q. And while you were talking to him, did he appear to be mature and sophisticated enough to understand what he was doing?
A. Yes. He seemed like a normal 15-year-old.

No objection was made to this testimony.

question of the juvenile's culpability and responsibility for his conduct); *see also City of Keller*, 168 S.W.3d at 819 (noting factfinder is sole judge of weight to be given testimony); *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761 (same).

In his brief, R.I.C. argues this factor "should always be weighed against the State, unless the State showed a juvenile premeditation of such a documentable degree that it could overcome the 'rule forbidding psychiatrists from diagnosing any patient under 18 as having antisocial personality disorder.'" R.I.C. does not cite any authority to support this argument, and we have found none.

E.     R.I.C.'s Record and Previous History, Prospects of Adequate Protection of the Public, and Likelihood of Rehabilitation

The third and fourth Section 54.02(f) factors a juvenile court is required to consider are "the record and previous history of the child" and "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." TEX. FAM. CODE ANN. § 54.02(f)(3)–(4). The juvenile court made the following findings regarding these factors:

11. The background of the child requires criminal proceedings because:

\*\*\*

B. According to Bexar County Juvenile Probation Officer Jeremy Torrez, . . . Respondent was in Safety Based Seclusion four times due to aggressive and assaultive behavior, he was placed on group restriction approximately 18 times (mostly for challenging authority), and has placed other juveniles in detention "on bow" (Respondent has attempted to place other juveniles under his rule).

\*\*\*

12. The welfare of the community requires criminal proceedings because:

A. The testimony of Juvenile Probation Office Jeremy Torrez shows that the prospect of adequate protection of the public and the likelihood of rehabilitation of the child using procedures, services and facilities currently available to the juvenile court are minimal because the Respondent has had five referrals to the department,

although he proceeded to court on only two (Possession of Marijuana from November 8, 2017 and this Capital Murder). However, he was placed on probation for the possession charge following an attempt to resolve the matter through a deferred contract. He was on probation when he removed the GPS monitor himself and absconded from supervision; Respondent admitted to being part of a gang (South Side Gunnas) and engaged in gang-like activities; Respondent has been noncompliant in his education. Based on Officer Torrrez' past experiences with the Respondent, Officer Torrez does not believe that the Respondent would make himself available to services in the juvenile system. The Respondent was involved with drug abuse and selling drugs. Officer Torrez recommended that Respondent be transferred to adult criminal court.

B. Dr. Heather Holder's report showed that the prospect of adequate protection of the public and the likelihood of rehabilitation of the child using procedures, services and facilities currently available to the juvenile court are minimal because the Respondent is gang-involved (Southside Goons/Southside Gunnas) and associates with "mature" friends who skip school, smoke weed, shoot guns and rob people. She further states that all of Respondent's friends have been to juvenile detention for various crimes including aggravated robbery, concealing a weapon and drug charges. According to Dr. Holder, Respondent is at high risk for future violence and committing future crimes. Dr. Holder believes Respondent is at moderate to high level of risk for future dangerousness because he has low empathy and remorse for previous actions.

C. Additionally, the prospect of adequate protection of the public and the likelihood of rehabilitation of the child using procedures, services and facilities currently available to the juvenile court are shown to be low because Dr. John Matthew Fabian reported that the "Respondent does not have a lot of self-reflection or insight...has difficulties with need for immediate gratification...He has problems with managing his mood and stress and anger...he has noted low frustration tolerance." Dr. Fabian also states that Respondent has a number of risk factors and his risk for future criminality and violence is high (including: high risk teen mom with mental health diagnoses and dysfunctional relationships with men; a broken family; chaotic relationships; domestic violence; significant substance abuse; exposure to drugs, drug dealing and drug paraphernalia; trauma and PTSD; neglect and CPS involvement; access/exposure to other delinquents, gangs, guns, drugs, and violence in the streets; poverty and lack of resources, etc.). Dr. Fabian reports that Respondent started dealing drugs at 14; Respondent has had problems in school, including truancy and a lack of parental commitment to fostering school. Respondent has an anger problem, difficulty dealing well with stress, poor coping skills and has low frustration tolerance.

Having reviewed the record, we hold the juvenile court's findings are supported by evidence presented at the hearing. Although R.I.C. focuses on the evidence that only two of his referrals resulted in adjudications by the juvenile court and evidence that he consistently attended

counseling while in detention, the juvenile court could have placed greater weight on R.I.C.'s actions while on probation in removing his GPS monitor and then committing the alleged capital murder offense. Similarly, although R.I.C. points to the evidence of the abuse and neglect he experienced in his home environment, the juvenile court could have placed greater weight on R.I.C.'s disciplinary record while in detention which demonstrated his inability to comply with the facility's rules even while consistently attending counseling.

F.      Juvenile Court's Decision to Waive Jurisdiction and Transfer

Based on the foregoing, we hold the evidence is legally and factually sufficient to support the juvenile court's findings. Furthermore, because the juvenile court reasonably applied the legislative factors to the evidence presented, we hold the juvenile court did not abuse its discretion in granting the State's petition.[5]

#### CONCLUSION

The juvenile court's order is affirmed.

Sandee Bryan Marion, Chief Justice

---

[5] Even if we accepted R.I.C.'s argument that the juvenile court could not have placed great weight on the finding that R.I.C. was sophisticated and mature because of Dr. Fabian's and Dr. Holder's assessment of R.I.C.'s sophistication and maturity to be low to moderate, "not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction." *Moon*, 431 S.W.3d at 47. Instead, the juvenile court may waive its jurisdiction based "on the strength of any combination of the criteria" listed in Section 54.02(f). *Hidalgo*, 983 S.W.2d at 754 n.16.