**Dominic McKAINE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–03–430–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 31, 2005.

Patti Hutson Mays, Victoria, for Appellant.

Michael A. Sheppard, Dist. Atty., Robert C. Lassmann, Asst. Dist. Atty., Cuero, for Appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## OPINION ON REHEARING

Opinion by Justice GARZA.

By two issues, Dominic McKaine challenges his conviction and sentence for burglary of a habitation and committing aggravated assault therein.[1] The Court's original opinion in this case reversed the trial court's judgment and remanded the case to the trial court for a new punishment hearing. *McKaine v. State,* No. 13–03–00430–CR, 2004 WL 905562, 2004 Tex. App. LEXIS 3777 (Tex.App.-Corpus Christi, April 29, 2004, no pet. h.). We now grant the State's motion for rehearing, withdraw our previous opinion, and issue this opinion, affirming the judgment of the trial court.

## Background

The conviction from which McKaine appeals stems from the following events. On November 12, 2002, McKaine and three other people used force to unlawfully enter the residence of Charles and Amy in Cuero, Texas.[2] McKaine entered the home carrying a twenty-gauge shotgun. His cohorts were armed with handguns. With their weapons drawn, the group forced Charles down onto the kitchen floor, threatening to kill him if he resisted.

---

1. *See* TEX. PENAL CODE ANN. § 30.02(a), (d) (Vernon 2003).

2. We withhold the couple's last name because of the nature of the crimes committed against them.

McKaine then pointed his shotgun at Charles's wife, Amy, and told her to take off her shirt. With her husband and three small children watching, Amy removed her shirt for McKaine, exposing her breasts. McKaine's companions then took Charles into the couple's bedroom, and McKaine took Amy and two of her children into a second bedroom. Once inside, he began to touch Amy, fondling her breasts and repeatedly telling her that he wanted to have sex and that he was going to have sex with her on her child's bed in front of her children. He threatened to kill her, her husband, and her children if she told anyone. McKaine then took Amy into the living room and in front of all three of her children, ordered her to pull down her pants. She refused. McKaine repeated his demand, and again, she refused, saying that she was "on her period." McKaine put his shotgun against the head of Amy's three year old son and said, "Pull down your pants and spread your legs, or I'm going to kill your son." She complied, but McKaine did not have sex with her. He and his companions left, taking a knife, cigarettes, and money belonging to the family. Before leaving, McKaine repeated his threat that he would kill all of them if they told anyone what happened.

At the time of the incident, McKaine was sixteen years old. He was originally charged as a juvenile, but the State petitioned the juvenile court to transfer the case to district court so that he could be prosecuted as an adult. After a hearing, the juvenile court certified McKaine as an adult and transferred the case. Before the

district court, McKaine pleaded guilty to burglary of a habitation and committing aggravated assault therein, a first-degree felony.[3] He requested that a jury determine his punishment. The jury sentenced him to seventy-five years' imprisonment.

McKaine raises two issues on appeal. First, he challenges the juvenile court's decision to transfer his case to district court for trial as an adult. Second, he argues that the trial court abused its discretion during the punishment phase of the trial by not allowing his attorney to question Amy and Charles regarding their involvement in drug activities.

## I. Transfer to District Court

In his first issue, McKaine claims that the juvenile court erred in transferring his case to district court.[4] He complains that the court erred by considering a psychological report because it amounted to inadmissible hearsay. McKaine also contends that the author of the report should have been present at the transfer hearing to explain her evaluation and the basis for her findings. Finally, he maintains that the juvenile court had insufficient evidence to transfer his case to district court for trial as an adult.

The juvenile court has exclusive, original jurisdiction over children seventeen years of age and younger. *Ex parte Waggoner,* 61 S.W.3d 429, 431 (Tex.Crim. App.2001); *see* TEX. FAM.CODE ANN. §§ 51.04(a), 51.02(2) (Vernon 2002) (discussing the jurisdiction of juvenile courts and defining "child"). Texas Family Code

---

3. *See id.*

4. Under Article 44.47 of the Texas Code of Criminal Procedure, an appeal from a juvenile court's decision to certify a defendant as an adult and to transfer the case under section 54.02 of the family code is a criminal matter. TEX.CODE CRIM. PROC. ANN. art.

44.47(a), (c) (Vernon Supp.2004). A challenge to the certification and transfer order can be made only in conjunction with the appeal of a conviction of or an order of deferred adjudication for the offense for which the defendant was transferred to criminal court. *Id.* at art. 44.47(b).

Section 54.02(a) provides that the juvenile court may waive its exclusive, original jurisdiction and transfer a child to the appropriate district court for criminal proceedings if the child is alleged to have committed a first-degree felony and was aged fourteen or older at the time of the alleged offense. TEX. FAM.CODE ANN. § 54.02(a) (Vernon 2002). A juvenile court's discretionary power to transfer a juvenile can be exercised only after the State files a petition or motion requesting waiver and transfer. *Hidalgo v. State*, 983 S.W.2d 746, 749 n. 3 (Tex.Crim.App.1999); *see* TEX. FAM.CODE ANN. §§ 53.04, 54.02(b) (Vernon 2002). When the State requests a transfer, the juvenile court is required to conduct a hearing without a jury to consider transfer of the child for criminal proceedings. TEX. FAM.CODE ANN. § 54.02(c). Before the transfer hearing, the court must order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense. *Id.* § 54.02(d); *In re J.S.C.*, 875 S.W.2d 325, 326 (Tex.App.-Corpus Christi 1994, writ dism'd by agr.). Based on this information, the court must determine whether there is probable cause to believe that the child committed the offense alleged and whether the welfare of the community requires criminal proceedings because of the seriousness of the offense or the background of the child. *See* TEX. FAM.CODE ANN. § 54.02(a); *In re J.S.C.*, 875 S.W.2d at 326. The juvenile court's decision to transfer a case to district court is reviewed for abuse of discretion. *Faisst v. State*, 105 S.W.3d 8, 12 (Tex.App.-Tyler 2003, no pet.); *see In re J.S.C.*, 875 S.W.2d at 326.

■■■ We first consider McKaine's argument that the trial court erred by considering a psychological report because it was inadmissible hearsay. Strict rules of evidence are not applied in transfer proceedings. *In re J.S.C.*, 875 S.W.2d at 330; *see also In re J.P.O.*, 904 S.W.2d 695, 699 (Tex.App.-Corpus Christi 1995, writ denied). Section 54.02(e) authorizes the juvenile court to "consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses." TEX. FAM.CODE ANN. § 54.02(e). In previous case involving the use of a psychiatric evaluation in a transfer hearing, this Court overruled an alleged hearsay error, noting that juvenile courts are authorized to consider such evidence. *See In re J.S.C.*, 875 S.W.2d at 330 (holding that there was "no error in ... the use of records even though [they] ... may not be admissible as evidence at an adjudication hearing").[5] We reach the same conclusion in this case. The juvenile court did not err in admitting the psychological report into evidence.

---

5. Other courts of appeals have also reached this conclusion. *See In re J.A.W.*, 976 S.W.2d 260, 264 (Tex.App.-San Antonio 1998, no pet.) ("Section 54.02(e) of the Family Code, which allows the court to consider written reports from probation officers, professional court employees, and professional consultants, provides an explicit exception to the hearsay rule in a transfer to criminal court proceeding."); *In re S.J.M.*, 922 S.W.2d 241, 242 (Tex.App.-Houston [14th Dist.] 1996, no writ) ("Because a juvenile transfer hearing is dispositional, rather than adjudicational in nature, a juvenile court may consider hearsay reports without violating the juvenile's right of confrontation."); *In re G.B.B.*, 638 S.W.2d 162, 164 (Tex.App.-Houston [1st Dist.] 1982, no writ) ("[A] juvenile court may consider hearsay reports...."); *In re Q.D.*, 600 S.W.2d 392, 394 (Tex.Civ.App.-Fort Worth 1980, no writ) ("Section 54.02 of the Family Code is a statutory exception to the hearsay rule and authorizes the introduction of specified reports that would otherwise be objectionable."); *In re R.G.S.*, 575 S.W.2d 113, 119 (Tex.Civ.App.-Eastland 1978, writ ref'd n.r.e.) ("A juvenile court may consider certain hearsay reports at a transfer ... hearing that would not be admissible at an adjudication hearing.").

■ 290

■ McKaine also argues that Dr. Karan Redus, who conducted his psychological evaluation and authored the report, should have testified at the transfer hearing. He contends that the juvenile court's duty to conduct a "full investigation and hearing" is not complete without live testimony from the author of any reports relied upon under section 54.02(e). Tex. Fam.Code Ann. § 54.02(c), (e). The State has not responded to this argument. Nevertheless, we cannot conclude that the juvenile court abused its discretion. The family code does not specifically require that the juvenile court hear live testimony from a professional consultant whose written report is considered under section 54.02(e). Id. § 54.02(e). It allows the court to consider "written reports from ... professional consultants in addition to the testimony of witnesses." Id. Although McKaine makes compelling arguments regarding the court's duty to be fully informed of the juvenile's circumstances, he has cited no cases holding that the court must receive live testimony in addition to the written reports. Our research has unearthed no such authority. Thus, we cannot conclude that the trial court abused its discretion. In so holding, we note that although McKaine's trial counsel complained of Dr. Redus's absence at the hearing, the record does not show that he ever attempted to subpoena her or otherwise solicit her testimony. The record shows that McKaine's trial counsel received proper notice of Dr. Redus's report under section 54.02(e). Id.

■ Finally, McKaine argues that the juvenile court erred in transferring his case to district court because the evidence was insufficient to support a transfer. McKaine has not specified whether his challenge is to the legal or factual sufficiency of the evidence or to both. See In re J.P.O., 904 S.W.2d at 699–700 ("The juvenile court's findings of fact are re-

viewed by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers to a charge."). He also has not cited authorities for his contention that the evidence is insufficient. See Tex. R.App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). McKaine argues that the evidence adduced at the transfer hearing was insufficient to support a transfer because it showed that (1) he had never been adjudicated of a felony as a juvenile, (2) he suffered from drug addiction and had not received treatment, and (3) the Texas Youth Commission offered services that could assist in rehabilitating him. The State has not responded to McKaine's sufficiency arguments. Assuming without deciding that McKaine has properly presented this issue for review, we hold that it does not warrant reversal because his arguments do not address all of the grounds for the juvenile court's decision. Specifically, McKaine has not addressed the court's finding that the seriousness of the offense necessitated criminal proceedings to protect the welfare of the community.

■ As noted above, the juvenile court has discretion to waive its jurisdiction and transfer a case to criminal court if it finds that there is probable cause to believe that the child committed the offense alleged and that the welfare of the community requires criminal proceedings because of the seriousness of the offense or the background of the child. See Tex. Fam.Code Ann. § 54.02(a); In re J.S.C., 875 S.W.2d at 326. In making this determination, the court is required to consider (1) whether the alleged offense was against a person or property, with greater weight in favor of transfer given to offenses against the person; (2) the sophistication and maturity of

the child; (3) the record and previous history of the child; and (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities available to the juvenile court. TEX. FAM.CODE ANN. § 54.02(f). While the juvenile court must consider all of these factors before transferring the case to district court, it is not required to find that each factor is established by the evidence. *In re D.D.*, 938 S.W.2d 172, 176 (Tex.App.-Fort Worth 1996, no writ); *In re J.S.C.*, 875 S.W.2d at 329; *In re M.D.B.*, 757 S.W.2d 415, 417 (Tex.App.-Houston [14th Dist.] 1988, no writ). The court is also not required to give each factor equal weight as long as each is considered. *In re J.J.*, 916 S.W.2d 532, 535 (Tex.App.-Dallas 1995, no writ); *In re C.C.G.*, 805 S.W.2d 10, 15 (Tex.App.-Tyler 1991, writ denied).

■ In its order, the juvenile court discussed each of the foregoing factors and how they influenced its decision. The court also noted that "after conducting ... [a] full investigation, including evidence and argument of counsel, the Court finds that the welfare of the community requires criminal proceedings, because of the seriousness of the offenses and the background of the child and ... [because] there is probable cause to believe the child committed the offenses...." On appeal, McKaine argues that his background did not require criminal proceedings for the protection of the community's welfare, but he does not challenge the court's finding that the seriousness of the offense warranted criminal proceedings. A court does not abuse its discretion by finding the community's welfare requires transfer due to the seriousness of the crime alone, regardless of the child's background. *See In re D.D.*, 938 S.W.2d at 177; *In re C.C.G.*, 805 S.W.2d at 15. Thus, even if we were to sustain McKaine's challenge regarding

his background, his failure to challenge the court's finding regarding the seriousness of the offense would preclude relief on his sufficiency arguments. Appellant's first issue is therefore overruled.

## B. Admissibility of Evidence at Punishment Phase

■ In his second issue, McKaine claims that the trial court erred by not allowing his trial counsel to question Amy and Charles on their involvement in drug-related activities prior to the burglary. McKaine's attorney sought to ask Amy and Charles whether they were drug dealers and whether McKaine and his three companions had stolen cocaine and marihuana from them along with the knife, cigarettes, and money. Before trial, the State filed a motion in limine regarding this testimony, which the court granted. At trial, the testimony was ultimately excluded as irrelevant. *See* TEX.R. EVID. 401.

■ A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996); *Ford v. State*, 26 S.W.3d 669, 672 (Tex. App.-Corpus Christi 2000, no pet.). Even if the trial court gave the wrong reason for its decision, *Salas v. State*, 629 S.W.2d 796, 799 (Tex.Crim.App.-Houston [14th Dist.] 1981), the decision will be upheld as long as it is correct on some theory of law applicable to the case. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex.Crim.App.2002). Even if there is no legal basis to support the ruling, the reviewing court must still disregard the error unless it affected the defendant's substantial rights. *See* TEX. R.APP. P. 44.2(b).

On appeal, McKaine focuses almost exclusively on whether the trial court erred by ruling that the excluded evidence was irrelevant. Regardless of whether the trial court's determination of relevance was

correct, its ruling will not be disturbed if it can be upheld on some other legal basis. *See Osbourn,* 92 S.W.3d at 538; *Salas,* 629 S.W.2d at 799. Although we recognize the significance of the relevance issue, especially because it was the stated reason for the trial court's ruling, we must also recognize that, on appeal, the State has raised other bases on which the trial court's ruling can be upheld. In addition to defending the court's ruling on relevance, the State argues that the evidence was properly excluded under rule 513, as it amounted to no more than denials of criminal activity and assertions of the victim's Fifth Amendment rights. *See* Tex.R. Evid. 513. Appellant has not responded to this argument. Nor has appellant addressed the possibility that the evidence in question could have been properly excluded under rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice it created. *See* Tex.R. Evid. 403.

██ We agree with the State's contention that the evidence, whether relevant or not, could have been properly excluded because it was offered to allow the jury to consider the witnesses' assertions of their Fifth Amendment rights. *See* Tex.R. Evid. 513. The reporter's record includes the following exchange that took place as defense counsel examined one of the witnesses outside the jury's presence:

**Defense Counsel:** [D]id you or did you not know of contraband, namely, marijuana, and cocaine that was taken from your house on this particular night we're talking about?

**Witness:** I plead the Fifth.

**The Court:** Okay. Is that all then?

**Defense Counsel:** That's all I have for her outside the presence of the jury, but I'd like to ask her that same question in front of the jury, and I think it goes towards the offense that they've alleged against my client, and I—

**The Court:** Alright. The objection of the State will be sustained.

Defense counsel was later allowed to examine the second witness outside the jury's presence and the following exchange occurred:

**Defense Counsel:** During the commission of this offense were any personal items of yours taken?

**Witness:** I had a knife, some money, and I had a pistol, and that's it.

**Defense Counsel:** There were no narcotics?

**Witness:** No.

**Defense Counsel:** You realize you're under oath?

**Witness:** I realize I'm under oath.

**Defense Counsel:** And you will be charged with perjury, if you're lying?

**Witness:** I will plead the Fifth, if you keep asking me a question like that.

\* \* \*

**Defense Counsel:** Your Honor, again, I just put it to the Court that I believe that that particular witness has evidence that the jury would find relevant, as far as McKaine's punishment goes, and I will make the same argument about the facts of . . . [the first witness's] testimony also and reurge the Court to allow that to come in.

**The Court:** Well, this last witness that testified, what part of the evidence— what part of the testimony do you want to have the jury hear?

**Defense Counsel:** Well, your Honor, he pled—he said he would take the Fifth Amendment, which is not incriminating himself. He is not on trial, he is just simply a witness, and he should be urged to testify to the truth of those questions.

**The Court:** And that's the part that you want to be submitted to the jury?

**Defense Counsel:** That's correct.

**The Court:** All right. I'll—I'll deny your tender.

■ Based on these excerpts from the reporter's record, we cannot dismiss the possibility that the trial court excluded the testimony because defense counsel sought to have the witnesses assert their Fifth Amendment rights in the jury's presence. A witness's assertion of his or her Fifth Amendment rights and refusal to testify is not evidence and the jury is not allowed to draw any inferences from such actions. *See* Tex.R. Evid. 513(d); *Torres v. State,* 137 S.W.3d 191, 198 n. 3 (Tex.App.-Houston [1st Dist.] 2004, no pet.). Accordingly, we conclude that the trial court's ruling can be upheld on a basis other than relevance. We therefore overrule McKaine's second issue.

The judgment of the trial court is affirmed.