

# NUMBER 13-21-00089-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF N.J.T., A JUVENILE

On appeal from the 138th District Court
of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Longoria**

Appellant N.J.T.[1] contends that the juvenile court abused its discretion in waiving exclusive jurisdiction and transferring his proceeding to criminal district court for prosecution as an adult. Specifically, by one issue, N.J.T. argues that the juvenile court erred because appellee the State failed to meet its burden under § 54.02(j)(4)(A) of the Texas Family Code to establish by a preponderance of the evidence that for a reason

---

[1] We refer to appellant by his initials as required by statute and to protect his privacy. *See* TEX. FAM. CODE ANN. § 56.01(j) ("Neither the child nor his family shall be identified in an appellate opinion rendered in an appeal or habeas corpus proceedings related to juvenile court proceedings under this title.").

beyond the control of the state, it was not practicable to proceed in juvenile court before N.J.T.'s eighteenth birthday. We affirm.

## I.    BACKGROUND

### A.    Alleged Offense

On or about October 15, 2018, A.B., a six-year-old girl, made an outcry that she had been sexually assaulted while in attendance at a church in Brownsville, Texas. On December 31, 2018, during a church service, A.B. recognized N.J.T. and informed her mother that he was the alleged perpetrator. On January 8, 2019, while at the Cameron County Children's Advocacy Center Monica's House, A.B.'s mother identified N.J.T. from several Texas driver's license photographs as the person A.B. identified. On February 8, 2019, N.J.T. was arrested on the charge of aggravated sexual assault of a child. *See* TEX. PEN. CODE ANN. § 22.021. N.J.T.'s date of birth is October 16, 2002, and at the time of the alleged offense, N.J.T. was about to turn sixteen years old.

### B.    Procedural History

On March 1, 2019, when N.J.T. was approximately sixteen years old and four months, the State filed its petition alleging delinquent conduct against N.J.T. which was assigned cause number 2019-DJV-00103. A jury trial was later set for March 25, 2019, but the record does not reflect that a jury trial proceeded on that date. On March 21, 2019, N.J.T.'s trial counsel filed a notice of oral deposition with subpoena duces tecum, and later on April 15, 2019, filed N.J.T.'s first request for production filed as a motion. On May 29, 2019, N.J.T. failed to appear for court, and announcements were reset to July 31, 2019, which was later set to August 30, 2019. However, on August 30, 2019, N.J.T.'s trial

2

counsel was unavailable, and the case was again reset to September 20, 2019. On September 20, 2019, N.J.T.'s motions, pre-trial motions, and witness list were set for October 16, 2019, announcements and trial motions were set for November 20, 2019, and a jury trial was set for December 2, 2019.

Approximately one month after N.J.T. had reached the age of seventeen, on November 18, 2019, N.J.T.'s previous trial counsel filed a motion for continuance stating she needed more time to prepare for the case, and one day later, she filed another motion for authorization to secure an investigator. On November 20, 2019, announcements were reset to December 18, 2019, where the juvenile court set, among other things, a jury trial for March 2, 2020. The grand jury found probable cause to believe N.J.T. had engaged in delinquent conduct as alleged in the State's petition, which was filed on December 19, 2019. On February 24, 2020, the case was reset to March 6, 2020.

On March 5, 2020, the State filed its petition for discretionary transfer to criminal court against N.J.T., which was assigned cause number 2020-DJV-00112. On March 6, 2020, the juvenile court signed an order which directed the clerk to issue summons to N.J.T. for a hearing on the State's petition for discretionary transfer to criminal court. N.J.T. appeared with new trial counsel on March 6, 2020, and the discretionary transfer hearing was set for March 25, 2020.[2] Approximately one week later on March 11, 2020, the juvenile court signed an order for a complete psychiatric evaluation, a complete psychosocial evaluation, a full social evaluation and complete diagnostic study, as well

---

[2] We note that the supplemental record reflects that at the hearing on March 6, 2020, a hearing was set for March 25, 2020, to determine when the discretionary transfer hearing could be set. The record however reflects that the discretionary transfer hearing was set on March 25, 2020.

as a full investigation of N.J.T., his circumstances, and the circumstances of the alleged offenses. On March 25, 2020, the case was reset to May 27, 2020, with a notation of "(Due to Covid-19)."[3] On May 27, 2020, State and defense counsel agreed to an approximate two-week reset. On June 8, 2020, the State requested a reset and N.J.T. agreed to another approximate two-week reset to June 24, 2020 with the juvenile court's approval. However, the hearing did not proceed on said date, and on June 30, 2020, the discretionary transfer hearing and announcements were reset to October 7, 2020, again with a notation of "(Due to Covid-19)."[4] On August 28, 2020, the social study and diagnostic study were filed. The discretionary transfer hearing did not proceed on October 7, 2020. Nine days later, N.J.T. turned eighteen.

After N.J.T. turned eighteen, the State requested an unopposed reset setting the

---

[3] We observe that on March 13, 2020, the Texas Supreme Court and the Court of Criminal Appeals of Texas issued their First Emergency Order Regarding the Covid-19 State of Disaster, which ordered in relevant part that:

[(2.)] Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public— without a participant's consent: [(a.)] Modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted[;] . . . and [(f.)] take any other reasonable action to avoid exposing court proceedings to the threat of COVID-19.

See Supreme Court Order of March 13, 2020, Misc. Docket No. 20-9042; Court of Criminal Appeals Order of March 13, 2020, Misc. Docket No. 20-007.

[4] We observe that on June 29, 2020, the Texas Supreme Court issued its Eighteenth Emergency Order Regarding the Covid-19 State of Disaster, which ordered in relevant part that:

[(3.)] Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public— without a participant's consent: [(a.)] except as provided in paragraph (b), modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than September 30, 2020[;] . . . [(g.)] take any other reasonable action to avoid exposing court proceedings to the threat of COVID-19.

See Supreme Court Order of June 29, 2020, Misc. Docket No. 20-9080.

hearing to January 13, 2021, the State filed its first amended petition for discretionary transfer to criminal court adding two new allegations against N.J.T. arising from the same alleged incident, and filed a motion for a second psychiatric evaluation. One day before the discretionary transfer hearing, N.J.T.'s trial counsel submitted a notice of filing in N.J.T.'s case of a petition for discretionary transfer to criminal court and order in a different juvenile case out of the same county.

On January 14, 2021, the State moved to dismiss cause number 2019-DJV-00103 asserting the cause had been re-indicted and re-filed, and the trial court subsequently ordered dismissal.

## C.    Discretionary Transfer Hearing

On January 13, 2021, the juvenile court held a discretionary transfer hearing, and took judicial notice of everything that had been filed. At the hearing, counsel for N.J.T. requested the State to set forth it reasons for why there was a delay in proceeding before N.J.T.'s eighteenth birthday. *See* TEX. FAM. CODE ANN. § 54.02(j)(4)(A). The State explained that: (1) it was interrupted by Covid-19, (2) there was an emergency order that was issued by the governor and the county judge to shelter in place, unless they were essential personnel and this was not essential personnel at the time, (3) N.J.T.'s prior defense counsel contributed to the delays, (4) the juvenile court had a hearing, and (5) the juvenile court reset some hearings on its own initiative due to Covid-19. N.J.T. responded that: (1) Covid-19 was not a reason for the delay because the State proceeded with a certification hearing in another matter on June 10, 2020, (2) the docket reflects that the State kept asking for continuances, (3) the State asked for resets, (4) the State could

5

have requested a hearing before N.J.T. turned eighteen, and (5) the State could have decided to certify N.J.T. as an adult earlier as shown by the fact that the grand jury indicted him. Towards the conclusion of the hearing, the juvenile court stated as follows:

> My ruling is that based on the pandemic, based on all the delays we've had because of the Supreme Court, because of the county judge—I do remember where [N.J.T.'s prior defense counsel] filed all these motions and it delayed the case and she wanted all these hearings and all that, that that further delayed the case, and I will find that the State acted appropriately.

Thereafter, on January 19, 2021, the juvenile court granted N.J.T.'s request for the following findings to be included in the waiver of jurisdiction and order of transfer to criminal court:

> The Court hereby finds that it did proceed on other discretionary transfers, specifically [another juvenile proceeding] on June 10, 2020[,] where witnesses as in this case did appear or were available by video testimony. The Court further finds, the Social Diagnostic Study on [N.J.T.] was completed on August 28, 2020 prior to [N.J.T.'s] eighteenth birthday. The Court also finds that the Petition for Discretionary Transfer to Adult Criminal Court was re-set on several occasions at the request of the State.

> The Court further finds that all investigatory evidence in the alleged delinquent conduct by [N.J.T.] had been completed by the State at the time the State's Petition Alleging Delinquent Conduct was filed on March 1, 2019.

On March 5, 2021 the juvenile court signed a waiver of jurisdiction and order of transfer to criminal court, in which it made the following pertinent finding:

> The Court [f]inds by a preponderance of the evidence that for a reason beyond the control of the State, that it was not practicable to proceed in juvenile court before [N.J.T.'s] 18th birthday; namely: that the State[']s Petition Alleging Delinquent Conduct was filed on March 1, 2019 and [N.J.T.] requested a jury trial. After several resets due to [N.J.T.'s] requests for an investigator, [N.J.T.'s] request for deposition and [N.J.T.'s] failure to appear on 5/29/19, the State filed its Discretionary Transfer on March 5, 2020[,] because [N.J.T.] had turned 17. Moreover, it was at this time that the Covid 19 pandemic ensued and thus since March, 2020, there have been numerous resets outside of the State[']s control due to the Covid

pandemic. Given that Emergency Orders by both the State and County have prevented in-court appearances and that the State by its own initative has reset many cases to limit in person contact with outside persons to prevent the spread of the Covid virus; the Court finds that the State did not unduly delay the proceedings in this matter.

This accelerated appeal followed. *See* TEX. FAM. CODE. ANN. §§ 54.02(j), 56.01(c)(1)(A), (h), (h-1).

## II.    DISCUSSION

N.J.T. argues that the juvenile court abused its discretion in finding that the State satisfied its burden under § 54.02(j)(4)(A), and thus the juvenile court lacked jurisdiction to transfer the case to criminal district court. *See id*. § 54.02(j)(4)(A).

## A.    Standard of Review

We evaluate the trial court's findings of fact under traditional sufficiency of the evidence principles in reviewing a discretionary transfer. *In re A.M.*, 577 S.W.3d 653, 658 (Tex. App.—Houston [1st Dist.] 2019, pet. granted); *see also In re D.J.M.*, No. 03-18-000476-CV, 2019 WL 190535, at *2 (Tex. App.—Austin January 14, 2019, no pet.) (mem. op.). "In reviewing legal sufficiency of the evidence in a juvenile court transfer case, 'we view the evidence in the light most favorable to the court's findings and determine whether there is any evidence to support such findings.'" *In re J.C.W.G.*, 613 S.W.3d 560, 569 (Tex. App.—San Antonio 2020, no pet.) (quoting *Faisst v. State*, 105 S.W.3d 8, 12 (Tex. App.—Tyler 2003, no pet.)); *see also In re M.G.*, No. 13-18-00294-CV, 2018 WL 6241036, at *4 (Tex. App.—Corpus Christi–Edinburg November 29, 2018, no pet.) (mem. op.). The no evidence challenge fails if there is more than a scintilla of evidence to support the finding. *See In re J.C.W.G.*, 613 S.W.3d at 569. "Under a factual sufficiency challenge,

7

we consider all the evidence presented to determine if the court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust." *In re A.M.*, 577 S.W.3d at 659; *see also In re M.G.*, 2018 WL 6241036, at *4.

"If the findings of the juvenile court are supported by legally and factually sufficient proof, then we review the ultimate decision to waive under an abuse of discretion standard." *See In re A.M.*, 577 S.W.3d at 659; *see also Collins v. State*, 516 S.W.3d 504, 520 (Tex. App.—Beaumont 2017, pet denied); *In re B.W.K.*, No. 11-20-00238-CV, 2021 WL 1421536, at *2 (Tex. App.—Eastland Apr. 15, 2021, no pet.) (mem. op.). A court abuses its discretion if it acts without reference to any guiding rules and principles. *See In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 226 (Tex. 2016). An abuse of discretion does not occur when a trial court bases its decisions on conflicting evidence. *See In re B.N.F.*, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.).

## B.    Applicable Law

The Legislature has granted courts designated as juvenile courts with original and exclusive jurisdiction over juvenile proceedings. *See* TEX. FAM. CODE ANN. § 51.04; *Ex parte Thomas*, 623 S.W.3d 370, 376 (Tex. Crim. App. 2021); *see also McKaine v. State*, 170 S.W.3d 285, 288 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). Under certain conditions, a juvenile court may waive its exclusive original jurisdiction and transfer the proceeding to a district court for criminal prosecution. *See* TEX. FAM. CODE ANN. § 54.02(a), (j); *In re A.M.*, 577 S.W.3d at 657–58.

Once a juvenile turns eighteen years old, the juvenile court's jurisdiction is limited to either dismissing the case or transferring the case to criminal district court. *See In re*

8

*N.J.A.*, 997 S.W.2d 554, 556 (Tex. 1999); *see also In re A.M.V.*, No. 13-17-00317-CV, 2017 WL 4987146, at *1 (Tex. App.—Corpus Christi–Edinburg November 2, 2017, no pet.) (mem. op.). "The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule . . . ." *Ex parte Thomas*, 623 S.W.3d at 376. For a juvenile court to validly waive jurisdiction and transfer a case to a criminal court, it must satisfy the terms of the statute. *Id*.

Section 54.02(j) governs the waiver of a juvenile court's exclusive original jurisdiction and transfer to criminal district court where the juvenile is eighteen years old at the time of the transfer hearing.[5] *See* TEX. FAM. CODE ANN. 54.02(j); *In re J.C.W.G.*, 613 S.W.3d at 568 ("[S]ection 54.02(j) provides for transfer of a case from juvenile court to criminal court if certain requirements are met and the defendant is at least [18] years old."); *see also In re K.T.S.*, No. 01-18-00778-CV, 2018 WL 6318515, at *7 (Tex. App.—Houston [1st Dist.] December 4, 2018, no pet.) (mem. op.). Specifically, "[§] 54.02(j)(4)(A)

---

[5] Section 54.02(j) of the Texas Family Code has five parts, but since N.J.T. raises an issue with only one sub-subsection, namely § 54.02(j)(4)(A), we include only that sub-subsection within the body of this memorandum opinion. *See* TEX. FAM. CODE ANN. § 54.02(j)(4)(A). Nonetheless, the pertinent part of § 54.02(j) provides as follows:

> The juvenile court may waive its exclusive jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proeecedings if: (1) the person is 18 years of age or older; (2) the person was: . . . (B) 14 years of age or older and under 17 years of age at the time the person is alleged to have committed an aggravated controlled substance felony or a felony of the first degree other than an offense under Section 19.02, Penal Code; [or] (C) 15 years of age or older and under 17 years of age at the time the person is alleged to have committed a felony of the second or third degree or a state jail felony; (3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted; (4) the juvenile court finds from a preponderance of the evidence that: (A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; . . . and (5) the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.

*Id*. § 54.02(j).

requires the State to show 'that for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person.'" *Moore v. State*, 532 S.W.3d 400, 403 (Tex. Crim. App. 2017) (quoting TEX. FAM. CODE ANN. 54.02(j)(4)(A)) (explaining that "[t]his is meant to limit the prosecution of an adult for an act he committed as a juvenile if his case could reasonably have been dealt with when he was still a juvenile.").

## C. Analysis

N.J.T. only challenges the juvenile court's finding that "by a preponderance of the evidence that for a reason beyond the control of the State, that it was not practicable to proceed in juvenile court before [N.J.T.'s] 18th birthday[.]" N.J.T. argues the juvenile court abused its discretion given the evidence before it, specifically: (1) the time span of the case, (2) that the State proceeded with a different certification hearing during the Covid-19 pandemic, (3) that the State had all investigatory evidence and reports needed to proceed with the discretionary transfer hearing, and (4) the State requested several resets.

### 1. Time Span of the Case

N.J.T. argues the State filed its petition alleging delinquent conduct on June 5, 2019,[6] and that over nine months passed until the State filed its petition for discretionary transfer. N.J.T. further argues that the majority of this time was prior to the commencement of the Covid-19 pandemic. Additionally, N.J.T. argues that on December 18, 2020, the State filed its first amended petition, and the hearing on the petition was

---

[6] The supplemental clerk's record in cause number 2019-DJV-00103-I reflects that the State filed its petition for delinquent conduct on March 1, 2019.

held on January 13, 2021. Lastly, in support of this argument, N.J.T. argues that the time between when the State filed its first petition and the final hearing was over one and a half years.

While the time period from the State's petition alleging delinquent conduct to the discretionary transfer hearing was longer than a year and a half, there is also evidence in the record that N.J.T.'s prior defense counsel prior to Covid-19 attributed to the delay in the case, as she filed a motion for continuance requesting more time to prepare and a motion for authorization to secure an investigator approximately eight months after the State's petition was filed. Additionally, at the transfer hearing, the State argued that N.J.T.'s prior defense counsel filed continuous motions for discovery and inspection. *See In re J.C.W.G.*, 613 S.W.3d at 567 ("[T]he State has no duty to prevent a defendant form causing delay."); *see also In re L.M.B.*, No. 11-16-00241-CV, 2017 WL 253654, at *2 (Tex. App.—Eastland Jan. 6, 2017, no pet.) (mem. op.) (announcing its finding that "it was not practicable to proceed in juvenile court before the 18th birthday [of appellant]" and indicating "that it took into account the timing of the outcry, the court's calendar, the attorneys' calendars, the motion for continuance, and 'the time it takes to get an evaluation done'").

Additionally, also prior to Covid-19, the record shows that N.J.T. failed to appear on May 29, 2019, resulting in a reset and N.J.T.'s trial counsel was unavailable on August 30, 2019, resulting in another reset. Lastly, the record shows that after the Covid-19 pandemic ensued there were two resets due to Covid-19. Thus, given that N.J.T.

contributed to the delays coupled with the delays from Covid-19, we disagree with N.J.T.'s time span argument as reasons that were within the control of the State.

### 2. Other Transfer Hearing

N.J.T. also argues that the State cannot use Covid-19 as an excuse because it proceeded on another juvenile discretionary transfer hearing during the pandemic which from inception took only a period of six months during the most restrictive months of the pandemic. In support, N.J.T. points to the juvenile court's finding that "[the juvenile court] did proceed on other discretionary transfers, specifically [in another juvenile matter] on June 10, 2020 where witnesses as in this case did appear or were available by video testimony[]" while N.J.T.'s case remained pending. However, when the transfer hearing in the other juvenile matter proceeded, the record reflects that the social study and diagnostic study for N.J.T. had not yet been filed. Indeed, at the request of N.J.T., the juvenile court made a specific finding that "[t]he Social Diagnostic Study on [N.J.T.] was completed on August 28, 2020 prior to [N.J.T.'s] eighteenth birthday." Thus, during the time period that the State proceeded in the other juvenile matter, the State could not have permissibly proceeded with a transfer hearing for N.J.T. given § 54.02(d)'s statutory requirement of obtaining a complete diagnostic study prior to the hearing. *See* TEX. FAM. CODE. ANN. § 54.02(d) ("Prior to the hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense."); *McKaine*, 170 S.W.3d at 289.

Additionally, the State responds that the facts of the other juvenile matter are distinguishable as the respondent in that matter was over the age of eighteen at the time the petition against him was filed, which removes the requirement for a social and diagnostic study allowing them to forego a statutory requirement. *See In re A.M.*, 577 S.W.3d at 667 ("Section 54.02(d) establishes certain required steps for transfer under Section 54.02(a) . . . ."); *see also In re R.S.*, No. 11-19-00011-CV, 2019 WL 2557532, at *3 (Tex. App.—Eastland June 20, 2019, no pet.) (mem. op.) (noting that a diagnostic study was performed prior to the hearing but was not necessary because appellant was over the age of eighteen). Therefore, given that the State could not have permissibly proceeded with N.J.T.'s case until completion of the social study and diagnostic study, we disagree that the State's decision to proceed in a separate and distinguishable juvenile matter was an impermissible delay by the State.

### 3. Investigation and Reports

N.J.T. next argues that (1) the juvenile court made a finding that "all investigatory evidence in the alleged delinquent conduct by [N.J.T.] had been completed by the State at the time the State's petition alleging delinquent conduct was filed on March 1, 2019[,]" (2) the State had all the evidence and witnesses to proceed with an adjudication hearing prior to N.J.T.'s eighteenth birthday, and (3) at the moment the State had the behavorial assessment report, the psychiatric evaluation, and social diagnostic study on August 28, 2020, it had all the necessary reports to request a setting and proceed with the discretionary transfer hearing.

N.J.T.'s first argument fails because the juvenile court's finding that "[a]ll investigatory evidence in the alleged delinquent conduct by [N.J.T.] had been completed by the State at the time the State's Petition Alleging Delinquent Conduct was filed on March 1, 2019[,]" does not mean that the State must proceed with a transfer hearing as of March 1, 2019, since it is a determination that is within the State's discretion to pursue. *See* TEX. FAM. CODE. ANN. §§ 53.04(a) ("If the preliminary investigation, required by Section 53.01 of this code results in a determination that further proceedings are authorized and warranted, a petition for an adjudication or transfer hearing of a child alleged to have engaged in delinquent conduct or conduct indicating a need for supervision may be made as promptly as practicable by a prosecuting attorney who has knowledge of the facts alleged or is informed and believes that they are true."); 54.02(d). Additionally, the juvenile court as of March 1, 2019, had not yet ordered a diagnostic study, social evulation, and full investigation of the child, his circumstances, and the circumstances of the alleged offenses. *See id*. § 54.02(d).

With regards to N.J.T.'s second contention, while it may be correct that the State had all the evidence and witnesses to proceed with an adjudication hearing prior to N.J.T.'s eighteenth birthday, an adjudication hearing would have prevented the State from moving forward with the discretionary transfer. *See id.* §§ 54.02(a)(2), (j)(3) ("The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if: . . . no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted."); 53.04(a). At the transfer hearing, the State stated "[t]here

has been no adjudication hearing on this case since its inception." Moreover, the juvenile court made a finding that "[n]o adjucation hearing has been conducted concerning the offenses alleged in the State's Petition for Discretionary Transfer to Criminal Court."

Lastly, in regards to N.J.T.'s final contention, a setting for the discretionary transfer hearing was already set for October 7, 2020, which was due to Covid-19 as noted. *See generally*, *In re J.C.W.G.*, 613 S.W.3d at 567 ("The State is not responsible for court delays, which can be described as exceptional circumstances."). While the discretionary transfer hearing was not held on October 7, 2020, the record does not reflect that the State requested a reset or other delay during this short time period before N.J.T. turned eighteen. Additionally, the State argued that it was interrupted by Covid-19, which the juvenile court recognized during the hearing and in its transfer order. We thus disagree with N.J.T.'s arguments related to the investigation and mental health reports because as of March 1, 2019, the State did not have to proceed with a transfer hearing nor had it met all of the statutory requirements to do so, an adjudication hearing would have prevented the State from proceding with a discretionatary transfer, and a hearing was already set for October 7, 2020 which was before N.J.T.'s eighteenth birthday.

### 4. Delays by the State

Lastly, N.J.T. argues that the juvenile court found that the "Petition for Discretionary Transfer to Adult Criminal Court was re-set on several occasions at the request of the State." N.J.T. concedes that he was found to have delayed some of the court proceedings but contends that because the juvenile court only found delays by his

15

trial counsel to be an issue before the State filed its petition for discretionary transfer, these delays were inconsequential.

We do not agree that N.J.T.'s delays were inconsequential because each day still resulted in edging closer to his eighteenth birthday. *See* TEX. FAM. CODE ANN. §§ 54.02, 54.03; *see also Macias v. State*, No. 13-04-00027-CR, WL 2265075, at *1 (Tex. App.— Corpus Christi–Edinburg August 9, 2007, no pet.) (mem. op., not designated for publication) ("A proceeding to declare a juvenile a delinquent and a proceeding to waive jurisdiction and certify the juvenile as an adult for criminal prosecution are separate and distinct proceedings."). Additionally, while N.J.T. appers to blame his delays on his prior trial counsel, N.J.T. himself failed to appear on May 29, 2019, a finding made by the juvenile court, resulting in an approximate two-month reset to July 31, 2019.

While the record shows that the State requested two resets, on May 27, 2020 and on June 8, 2020, before N.J.T.'s eighteeth birthday, the record also shows an agreement by N.J.T.'s counsel as to both, and such approximate 30-day delay was before the diagnostic and social study had been filed. Additonally, while the record shows two delays by the State which were without agreement, such delays were after N.J.T. turned eighteen. *See* TEX. FAM. CODE ANN. § 54.02(j)(4)(A); *see generally Collins*, 516 S.W.3d at 520–21 (analyzing § 54.02(j)(4)(B) and concluding that delays after the appellant turned eighteen are not relevant in reviewing the juvenile court's findings with respect to the County's diligence). Thus, given that N.J.T. contributed to the delays, such delays were not within the control of the state. Additionally, given that the State's two delays before N.J.T.'s eighteenth birthday, totaling approximately 30-days, occured before the

16

diagnostic study and social study had been filed, such delays did not make it impracticable to proceed before N.J.T.'s eighteenth birthday.

**5.      Summary**

We find that the evidence offered by the State was more than a scintilla to support the juvenile court's finding that, for a reason beyond the control of the State, it was not practicable to proceed in juvenile court by petition before N.J.T.'s eighteenth birthday. *See In re J.C.W.G.*, 613 S.W.3d at 569. We also find that the challenged finding of the juvenile court was not against the great weight of the evidence. *See In re A.M.*, 577 S.W.3d at 659; *see also In re M.G.*, 2018 WL 6241036, at *5. Therefore, we conclude that the juvenile court did not abuse its discretion when it entered the transfer order, and we overrule N.J.T.'s sole issue.

**III.      CONCLUSION**

We affirm the judgment of the juvenile court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
16th day of September, 2021.